WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martha A. McNair,<br><br>    Plaintiff,<br><br>v.<br><br>Maxwell & Morgan PC, et al.,<br><br>    Defendants. | No. CV-14-00869-PHX-DGC<br><br>**ORDER** |

Defendant W. William Nikolaus has filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Doc. 12. For the reasons set forth below, the Court will deny the motion.[1]

Defendant has also filed a motion to strike Phillip Ticktin's "friend of the court" brief. Doc. 16. The motion is fully briefed and no party has requested oral argument. The Court will deny the motion.

**I.    Defendant's Motion to Dismiss.**

    **A.    Background.**

Plaintiff alleges that on August 3, 2004 she acquired real property located at 1144 East Temple Court in Gilbert, Arizona (the "Property"). Doc. 1, ¶ 9. The Property is part of the Neely Commons Phase 1 subdivision and is subject to a declaration of covenants,

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

conditions, and restrictions, which includes an obligation on the Property owner to pay assessments to the Neely Commons HOA (the "HOA"), which total about $450.00 annually. *Id*., ¶ 10.

Defendants named in Plaintiff's complaint represented the HOA in its efforts to collect HOA fees from Plaintiff. Defendant Nikolaus is one of the lawyers who represented the HOA. On December 21, 2009, Defendants filed suit in Maricopa County Highland Justice Court on behalf of the HOA seeking to recover $697 in unpaid HOA fees (the "First Lawsuit"). *Id*., ¶ 12. Plaintiff was not represented by counsel. *Id*., ¶ 13. In November 2010, Defendants obtained a judgment in the First Lawsuit for $1,466.80, which included costs, attorney's fees, and unpaid HOA fees. *Id*., ¶ 14.

On April 30, 2012, Defendants filed a second suit in Maricopa County Superior Court on behalf of the HOA seeking to foreclose Plaintiff's interest in the Property and to recover $4,027.24 of allegedly unpaid HOA fees. *Id*., ¶ 15. On June 27, 2012, Plaintiff and Defendants signed a document entitled "Stipulation for Judgment on Foreclosure" (the "Stipulation") and lodged a proposed order approving the stipulation. *Id*., ¶ 17. The Stipulation provided that the HOA would not execute on any judgment if Plaintiff made an initial payment of $2,500 by July 5, 2012 and if she made 12 monthly payments of $250 thereafter until the Judgment was paid in full. *Id*., ¶ 20. On July 12, 2012, the Superior Court accepted the Stipulation. *Id*., ¶ 18. Plaintiff alleges that the Stipulation included numerous provisions that are contrary to Arizona law, including a reduction of Plaintiff's statutory redemption period from six months to 30 days, a waiver of Plaintiff's personal property exemptions under A.R.S. § 33-1121 *et seq.*, which is statutorily prohibited by A.R.S. § 33-1132, an authorization to evict Plaintiff without adherence to Arizona law, and an award of future assessments, attorneys' fees, and costs. *Id*., ¶ 32.

Plaintiff alleges that she made the first 11 payments totaling $5,000. *Id*., ¶ 22. In May 2013, after making her eleventh payment, Plaintiff submitted a letter requesting a written statement of the balance owed under the Stipulation. *Id*., ¶ 23. Defendants did not respond to Plaintiff's letter until August 2013, and even then did not tell Plaintiff the

1 balance that remained to be paid. *Id.*, ¶ 26. Instead, they mailed her a copy of the Stipulation and asked her what she planned to do going forward. *Id*. In September 2013, Plaintiff again requested a statement of her account. *Id*., ¶ 27. Defendants again refused to provide a statement of the account. *Id*., ¶ 28. As a result, Plaintiff tendered payment of $275.74, which she believed was more than what was required under the Stipulation. *Id*. Notwithstanding Plaintiff's payment, Defendants treated the Stipulation as if it had been breached and sought to execute on Plaintiff's property. *Id*., ¶ 29.

On November 6, 2013, Defendants obtained a writ of special execution relating to the Stipulation to have the Property sold at a sheriff's sale. *Id*., ¶ 30. The writ of special execution was exclusively drafted by Defendants, included amounts not owed under the Stipulation, and did not credit all previous payments made by Plaintiff under the Stipulation. *Id*., ¶¶ 34-36. On January 9, 2014, the Maricopa County Sheriff conducted a sheriff's sale and sold the property. *Id*., ¶ 37.

Plaintiff instituted this action on April 24, 2014, alleging that Defendants' actions violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA").

### B.  Legal Standard.

#### 1.  Rule 12(b)(1): Subject Matter Jurisdiction.

The defense of lack of subject matter jurisdiction may be raised at any time by the parties or the Court. *See* Fed. R. Civ. P. 12(h)(3); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving a factual attack on jurisdiction, the Court "may review evidence beyond the complaint without converting the motion to dismiss to a motion for summary judgment." *Id.*; *see*

1 *Augustine*, 704 F.2d at 1077.

### 2. Rule 12(b)(6): Failure to State a Claim.

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Legal conclusions couched as factual allegations are not entitled to the assumption of truth, *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009), and therefore are insufficient to defeat a motion to dismiss for failure to state a claim, *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010). To avoid a Rule 12(b)(6) dismissal, the complaint must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## C. Analysis.

### 1. Subject Matter Jurisdiction.

Defendant Nikolaus argues that Plaintiff's claims were previously argued and adjudicated in state court. Doc. 12 at 15. Defendant asserts that this Court therefore lacks subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. *Id.*

The *Rooker-Feldman* doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under *Rooker-Feldman*, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court. *See Feldman*, 460 U.S. at 482; *Rooker*, 263 U.S. at 415-16.

> In its routine application, the *Rooker-Feldman* doctrine is exceedingly easy. A party disappointed by a decision of a state court may seek reversal of that decision by appealing to

- 4 -

> a higher state court. A party disappointed by a decision of the highest state court in which a decision may be had may seek reversal of that decision by appealing to the United States Supreme Court. In neither case may the disappointed party appeal to a federal district court, even if a federal question is present or if there is diversity of citizenship between the parties. *Rooker-Feldman* becomes difficult—and, in practical reality, only comes into play as a contested issue—when a disappointed party seeks to take not a formal direct appeal, but rather its de facto equivalent, to a federal district court.

*Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003). Examples of a "de facto equivalent" to which *Rooker-Feldman* applies include naming a state superior court as a federal defendant and alleging as a legal wrong that the state court's jury verdict was unconstitutional, *Worldwide Church of God v. McNair*, 805 F.2d 888 (9th Cir. 1986); naming each judge from a state appellate panel as a federal defendant and alleging a federal due process violation that effectively seeks to have the appellate panel's opinion vacated, *Bianchi v. Rylaarsdam*, 334 F.3d 895 (9th Cir. 2003); filing suit in federal court and asserting as a legal wrong the allegedly incorrect jurisdictional determinations of a state agency and the reviewing state court, *Olson Farms v. Barbosa*, 134 F.3d 933 (9th Cir. 1998); naming as defendants in a federal action the justices of a state supreme court and alleging that the justices violated the constitution by levying and collecting a fine, *Partington v. Gedan*, 961 F.2d 852 (9th Cir. 1992); alleging a constitutional violation in federal court when a state court dismissed a lawsuit for failure to comply with a discovery order, *Allah v. Superior Court*, 871 F.2d 887 (9th Cir. 1989); filing suit in federal court seeking to void a state default judgment because the state court allegedly lacked personal jurisdiction, *MacKay v. Pfeil*, 827 F.2d 540 (9th Cir. 1987); filing suit in federal district court to challenge a state supreme court decision to deny admission to the state bar, *Tofano v. Supreme Court of Nev.*, 718 F.2d 313 (9th Cir. 1983).

The *Rooker-Feldman* doctrine does not apply to this case. Plaintiff does not seek review of a state court decision and she does not seek its de facto equivalent. *See Vacation Vill., Inc. v. Clark Cnty., Nev.*, 497 F.3d 902, 907 (9th Cir. 2007) ("*Rooker-*

- 5 -

*Feldman* applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court *and* seeks as her remedy relief from the state court judgment.") (internal quotation marks and citation omitted) (emphasis in original).  Instead, she raises claims that Defendant asserts have been previously litigated.  *Rooker-Feldman*, collateral estoppel, and *res judicata* are separate and distinct doctrines.  The Court cannot conclude that it lacks subject matter jurisdiction over Plaintiff's federal statutory claim.

>    **2.   Failure to State a Claim.**
>
>         **a.   Statute of Limitations.**

Defendant argues that Plaintiff is barred from recovering on three alleged violations of the FDCPA (*see* Doc. 1, ¶ 42 at (i)-(iii)) by a one-year statute of limitations.  Doc. 12 at 7; *see* 15 U.S.C. § 1692k(d) (imposing a one-year limitations period for FDCPA violations).  Defendant asserts that each event listed in parts (i), (ii), and (iii) of paragraph 42 of Plaintiff's complaint occurred approximately two years before Plaintiff filed suit.  Doc. 12 at 7-8.  Plaintiff responds that her FDCPA claims did not accrue until foreclosure of her property commenced November 6, 2013, which is well within one-year of her April 24, 2014 filing date.  Doc. 27 at 7.  In the alternative, Plaintiff argues that the FDCPA violations are ongoing and that the statute of limitations is therefore tolled.  *Id*.

A motion to dismiss based on the running of the statute of limitations may be granted only if it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.  *Supermail Cargo, Inc. v. U.S.*, 68 F.3d 1204, 1207 (9th Cir. 1995) (citations omitted).  To determine when a limitations period began to run, the Court must apply the discovery rule.  "Federal law determines when the limitations period begins to run, and the general federal rule is that a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 940 (9th Cir. 2009) (internal quotation marks and citations omitted).

When "the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts," the suit is timely "if the action is filed

- 6 -

within one year of the most recent date on which the defendant is alleged to have violated the FDCPA and the entire course of conduct is at issue." *Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 281 F. Supp. 2d 1156, 1161 (N.D. Cal. 2003) (internal quotation marks and citation omitted). Plaintiff alleges that Defendant Nikolaus and his co-parties employed a progressive series of unfair and unconscionable tactics to collect an alleged debt that spanned from April 30, 2012 until about September 2013. Doc. 1, ¶¶ 41-42. The Court cannot conclude at this time that Plaintiff can prove no set of facts that would establish the timeliness of her claims.

### b.     Implausible Claims.

Plaintiff alleges that Defendant included amounts not owed under the Stipulation in a writ of special execution, including, but not limited to, costs, attorneys' fees, assessments, interest, and late fees. Doc. 1, ¶ 34-35. Defendant Nikolaus argues that the Stipulation expressly includes every category of expense that Plaintiff contends Defendant unfairly and wrongly included in the writ of special execution. Doc. 12 at 8-9. In support of their argument, Defendant appears to quote the first paragraph of the Stipulation, but neither party has provided the Court with a copy of the Stipulation. Because Plaintiff referred to the Stipulation extensively in her pleadings, the Court would normally consider the Stipulation in ruling on the motion to dismiss. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Defendant Nikolaus has not, however, provided the Court with an opportunity to examine the Stipulation by attaching the document to his filings. The Court cannot rely on the segment Defendant has excerpted from the Stipulation without consulting the entire document.

Defendant also argues that no FDCPA violation arises from Defendants' alleged failure to respond to Plaintiff's balance requests in May and September 2013, particularly in light of the fact that Plaintiff's balance requests received responses in August 2013 and November 2013 respectively. Doc. 12 at 10. The Court concludes that Plaintiff's complaint plausibly alleges violations of the FDCPA, which prohibits debt collectors from using the following tactics to collect a debt: making a "false representation of the

character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A); using any "false representation or deceptive means to collect or attempt to collect any debt," 15 U.S.C. § 1692e(10); and using any "false representation or implication that documents . . . do not require action by the consumer," 15 U.S.C. § 1692e(15). The test for determining whether a communication violates section 1692e is an objective standard based on the "least sophisticated consumer," which protects the "naïve and trusting" consumer while shielding debt collectors "against liability for bizarre or idiosyncratic interpretations of collection notices." *Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986, 995 (D. Ariz. 2010) (citations omitted). The least sophisticated consumer could plausibly interpret the defendants' silence and delayed responses as an implication that there were no amounts due under the Stipulation or that Plaintiff did not need to take any action to satisfy her obligations under the Stipulation. That implication was false and had the potential to trigger liability that was much greater than the amount remaining due under the Stipulation.

        **c.**      ***Res Judicata* and Collateral Estoppel.**

Defendant argues that Plaintiff's complaint is nothing more than an attempt to relitigate claims and issues previously adjudicated in state court. Doc. 12 at 11. Defendant asserts that Plaintiff's claims are barred by both *res judicata* and collateral estoppel. *Id*. Plaintiff responds that she is not challenging her liability under the Stipulation, which was decided by the state court; rather, she is challenging the debt collection practices utilized by Defendants that were not challenged in state court. Doc. 27 at 13.

"Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action. Under the doctrine of collateral estoppel, on the other hand, the second action is upon a different cause of action and the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 880 n.5 (9th Cir. 2007) (quoting *Parklane Hosiery Co.v.*

- 8 -

*Shore*, 439 U.S. 322, 326-27 n.5 (1979)).

The Court is not convinced at this time that either *res judicata* or collateral estoppel applies. Defendant has failed to attach a copy of any state court ruling that might enable the Court to determine what issues were determined in a previous proceeding involving these parties. In addition, Defendant's brief suggests that the state court action centered on whether the Stipulation was enforceable and whether Defendants were legally entitled to foreclose on Plaintiff's property. *See* Doc. 12 at 13. It does not appear from Plaintiff's complaint or Defendant's briefing that the state court determined whether the debt collection practices utilized by Defendants violated the FDCPA.

## II.     Defendant's Motion to Strike.

On June 24, 2014, Philip Ticktin filed a document entitled "Friend of the Court." Doc. 14. In the document Mr. Ticktin expresses a desire to aid the Court in its "dealings with Maxwell & Morgan" who Mr. Ticktin claims are CIA affiliated attorneys involved in illegal drug operations at the CIA's direction. *Id*. at 1-2. Mr. Ticktin's response brief is also peppered with surprising allegations of Maxwell & Morgan's misconduct that have nothing to do with the merits of this case, including an allegation that proceeds from Maxwell & Morgan's drug operations help effectuate CIA black operations independent of congressional oversight (Doc. 20 at 1), an allegation suggesting that the CIA is responsible for the untimely death of Judge John Roll (*id.* at 2), an allegation that Mr. Ticktin has compiled enough evidence against Maxwell & Morgan to institute a RICO prosecution (*id*.), and even an allegation that Mr. Ticktin would have been assassinated but for the fact that he is related to the founder of CBS who was a lifelong member of the OSS, CIA, and the Pennsylvania *Illuminati* (*id*.).

Defendant moves to strike Mr. Ticktin's "Friend of the Court" brief pursuant to Federal Rule of Civil Procedure 11(b) and Local Rule 7.2(m). Doc. 16 at 1. Defendant argues that Mr. Ticktin's brief is frivolous and filed for the purpose of harassment. Doc. 16 at 1. Because Mr. Ticktin is not a party to the lawsuit and has no right or procedural basis to file anything in this case, Defendant asserts that the Court should

strike his brief. *Id.* Mr. Ticktin's only response is that Defendant has not denied the truth of his allegations and that the Court should cooperate in his efforts to expose Maxwell & Morgan's true nature. Doc. 20 at 2.

The Court will grant Defendant's motion. Mr. Ticktin's filings are immaterial, impertinent, and scandalous. The Court will also enter an order that he submit no further filings in this proceeding.

**IT IS ORDERED**:

1. Defendant's motion to dismiss (Doc. 12) is **denied**.
2. Defendant's motion to strike (Doc. 16) is **granted**.
3. Mr. Ticktin is barred from submitting any further filings in this proceeding.

Dated this 26th day of August, 2014.

_____
David G. Campbell
United States District Judge