1    **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                 **FOR THE DISTRICT OF ARIZONA**

8

9    Martha A. McNair,                    No. CV-14-00869-PHX-DGC

10                    Plaintiff,          **AMENDED ORDER**

11   v.

12   Maxwell & Morgan PC, et al.,

13                    Defendants.

14

15        This case involves Defendants' efforts to collect debts owed by Plaintiff Martha

16   McNair.  She claims that Defendants' actions violated numerous provisions of the Fair

17   Debt Collection Practices Act ("FDCPA").  The parties have filed cross motions for

18   summary judgment (Docs. 80, 100) and the Court heard oral arguments on September 18,

19   2015 (Doc. 123).  Upon the parties' separate requests for reconsideration,[1] the Court will

20   deny Plaintiff's motion and grant Defendants' motion.[2]

21   _____

22        [1] On September 22, 2015, the Court issued an order denying Plaintiff's motion for
     summary judgment and granting in part Defendants' motion for summary judgment.
23   Doc. 124.  Both parties moved for reconsideration of Section III(B)(2)(a) of the order.
     Docs. 126, 130.  By separate order, the Court granted both motions for reconsideration.
24   This amended order reflects the Court's ruling on reconsideration and replaces the
     Court's September 22, 2015 order.
25
          [2] Defendants move to strike Plaintiff's motion for summary judgment.  Doc. 99.
26   They argue that Plaintiff violated the Court's case management order and the local rules
     by placing their legal citations in footnotes, filing a statement of facts that is more than
27   ten pages long, and not double-spacing the motion text.  Plaintiff apologizes for these
     violations, but argues that she did double-space the text in her motion.  Striking
28   Plaintiff's motion is too harsh a remedy for these violations, but Plaintiff's counsel is
     admonished to follow the case management order and local rules in the future.

I.      Background.

In August 2004, Plaintiff acquired a home in Gilbert, Arizona.  Doc. 81-1 at 2.
The home was part of the Neely Commons Association ("Association") and was subject
to a declaration of covenants, conditions, and restrictions.  *Id.* at 8-42.   Under this
declaration, owners are required to pay an annual assessment to the Association.  *Id.* at
16.  The Association can require an owner to pay the assessment in monthly installments.
*Id.* at 16-20.  If the owner fails to pay an installment, the Association can impose a late
charge of fifteen dollars and make a written demand for payment of the debt and
additional costs.  *Id.* at 20.  If the owner fails to pay the amount within ten days, the
Association can record a notice of lien on the owner's property.  *Id.* at 21.   The
Association has the right to collect the debt, along with late charges, costs, and attorneys'
fees, by suing the owner or bringing an action to foreclose the lien.  *Id.*

Plaintiff became delinquent in paying her annual assessment.  On November 4,
2009, Charles Maxwell of the firm Maxwell & Morgan P.C. sent a letter to Plaintiff
notifying her of the debt and stating that he may take legal action if she failed to pay.  *Id.*
at 61.  On December 21, 2009, Maxwell filed suit against Plaintiff in the Highland Justice
Court, alleging that she owed $697.  *Id.* at 64-65.  In January 2010, Plaintiff and Maxwell
entered into a payment agreement, under which Plaintiff was to pay $500 immediately
and $100 a month until her debt was paid off.  *Id.* at 75.  Plaintiff paid the $500 and three
of the monthly $100 payments before defaulting.  Doc. 81, ¶ 22.  In June and September
of 2010, Plaintiff made additional payments totaling $500.  Doc. 81-1 at 88, 104.   On
July 19, 2010, Maxwell revived the justice court lawsuit and sought a default judgment.
*Id.* at 92-93.  The court entered judgment on November 22, 2010, for $1,466.80.  *Id.* at
96-97.  Maxwell subsequently sent Plaintiff a letter demanding payment of the judgment.
*Id.* at 114.

The record is silent as to what occurred in 2011.  On April 30, 2012, Maxwell
filed a new lawsuit in Maricopa County Superior Court.  *Id.* at 121.   He alleged that
Plaintiff's debt had grown to $4,027.24.  *Id.* at 122.  William Nikolaus, who also worked

1      at Maxwell & Morgan, notified Plaintiff of the lawsuit and stated that the total amount

2      due was $6,307.24, which included $2,280 in attorneys' fees and costs.  *Id.* at 128.

3      Plaintiff offered to enter a payment plan, which Nikolaus accepted on the condition that

4      Plaintiff sign a stipulated judgment.  Doc. 101-1 at 36.  On June 29, 2012, Plaintiff and

5      Maxwell signed a stipulated judgment that recognized the Association's right to collect

6      the debt by selling Plaintiff's home.  Doc. 81-1 at 130-33.  In the stipulated judgment, the

7      Association agreed not to execute on the judgment if Plaintiff made an initial payment of

8      $2,500 and additional payments of $250 a month until the debt was satisfied.  *Id.* at 132.

9             Plaintiff paid the initial $2,500 and ten monthly payments of $250 through May of

10     2013.  Doc. 81, ¶ 57.  On May 5, 2013, she sent a letter to Nikolaus asking how much she

11     still owed.  Doc. 81-2 at 27.  On August 21, 2013, Nikolaus notified Plaintiff that she had

12     failed to make the required payments, including payments for her 2013 annual

13     assessment.  *Id.* at 31.  Nikolaus told her to review the stipulated judgment and warned

14     that the Association might take legal action.  *Id.*  On September 23, 2013, Plaintiff paid

15     $275.74 and asked Nikolaus to inform her if she owed anything else.  *Id.* at 45.

16            In November 2013, Maxwell requested, and the Superior Court granted, a writ of

17     special execution for foreclosure on Plaintiff's house.  *Id.* at 49-53.  The writ stated that

18     Plaintiff owed $4,791.58.  *Id.* at 53.  The sheriff held a foreclosure sale on January 9,

19     2014, the property was sold for $75,000, and Defendants received $5,559.74.  Doc. 81,

20     ¶¶ 75-76.  On May 14, 2014, the Superior Court awarded the Association an additional

21     $6,040.39 from the proceeds of the sale for attorneys' fees and costs.  Doc. 81-2 at 70-71.

22            Plaintiff filed this lawsuit on April 24, 2014, naming as Defendants Maxwell &

23     Morgan, Charles Maxwell, William Nikolaus, and their spouses.  Doc. 1.  She claims that

24     Defendants violated the FDCPA by misrepresenting the amount and character of her

25     debt, failing to account for the payments she made, misrepresenting the amount of her

26     debt to the justice court, taking actions that Arizona law prohibits, initiating multiple

27     lawsuits over the same debt, and refusing to explain the amount she owed.  Doc. 80.

28

1    **II.    Legal Standards.**

2           Summary judgment is appropriate if the evidence, viewed in the light most

3    favorable to the nonmoving party, shows "that there is no genuine dispute as to any

4    material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

5    56(a).   Summary judgment is also appropriate against a party who "fails to make a

6    showing sufficient to establish the existence of an element essential to that party's case,

7    and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*,

8    477 U.S. 317, 322 (1986).  Only disputes over facts that might affect the outcome of the

9    suit will preclude the entry of summary judgment, and the disputed evidence must be

10   "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v.*

11   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

12          The FDCPA was enacted to eliminate abusive debt collection practices, to ensure

13   that debt collectors who abstain from those practices are not competitively disadvantaged,

14   and to promote consistent state action to protect consumers.  15 U.S.C. § 1692(e); *Jerman*

15   *v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010).   The

16   FDCPA regulates interactions between consumer debtors and "debt collector[s]," defined

17   to include any person who "regularly collects . . . debts owed or due or asserted to be

18   owed or due another."   15 U.S.C. § 1692a(6).   A lawyer regularly engaged in debt

19   collection activity, even litigation, is considered a debt collector.  *See Heintz v. Jenkins*,

20   514 U.S. 291, 299 (1995).  A debt collector "who fails to comply with any provision of

21   [the FDCPA] with respect to any person is liable to such person" for actual damages and

22   additional damages not to exceed $1,000.  15 U.S.C. § 1692k(a).

23          The FDCPA is a strict liability statute.   *Clark v. Capital Credit & Collection*

24   *Servs., Inc.*, 460 F.3d 1162, 1175 (9th Cir. 2006).  It prohibits a wide array of abusive and

25   unfair practices.  *See Heintz*, 514 U.S. at 292-93.  In deciding whether a debt collector

26   has violated the FDCPA, courts assess the debt collector's conduct from the perspective

27   of a hypothetical "least sophisticated debtor."  *See Guerrero v. RJM Acquisitions LLC*,

28   499 F.3d 926, 934 (9th Cir. 2007) (citing *Clark*, 460 F.3d at 1171; *Wade v. Reg'l Credit*

1  *Ass'n*, 87 F.3d 1098, 1099-1100 (9th Cir. 1996)). The "least sophisticated debtor"

2  standard protects the "naïve and trusting" debtor while shielding debt collectors "against

3  liability for bizarre or idiosyncratic interpretations of collection notices." *Isham v.*

4  *Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986, 995 (D. Ariz. 2010) (quotation

5  marks and citation omitted). The FDCPA is a remedial statute and should be interpreted

6  liberally to protect debtors from abusive debt collection practices. *Evon v. Law Offices of*

7  *Sidney Mickell*, 688 F.3d 1015, 1025 (9th Cir. 2012).

8  **III. Analysis.**

9  In their cross motion for summary judgment, Defendants argue that (1) the

10  FDCPA's statute of limitations bars most of Plaintiff's claims, (2) the FDCPA does not

11  apply to those claims that arise out of Defendants' foreclosure action, (3) the stipulated

12  judgment authorized the amounts the Defendants sought in the foreclosure action, and

13  (4) res judicata and collateral estoppel bar many of Plaintiff's claims.[3] In response to

14  Plaintiff's motion, Defendants argue that their 2013 communications with Plaintiff were

15  neither false nor misleading, and did not constitute unfair or unconscionable means of

16  collecting a debt. The Court finds Defendants' arguments dispositive.

17  **A. Statute of Limitations.**

18  Under the FDCPA, a plaintiff must bring suit "within one year from the date on

19  which the violation occurs." 15 U.S.C. § 1692k(d). Plaintiff filed her complaint on

20

21  [3] During oral argument, Defendants made several arguments not found in their cross motion for summary judgment. These include that Defendants are not debt

22  collectors, that the amounts they sought to recover in this case were not debts, that the misstatements in their communications or filings were not material, and that they cannot

23  be lumped together as a single group of defendants. Defendants argued that Plaintiff was required to come forward with evidence on each of these issues because she will bear the

24  burden of proof at trial. The Court does not agree. In describing proper summary judgment procedure, the Supreme Court has explained that "a party seeking summary

25  judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. If a defendant asserts that a plaintiff lacks

26  evidence on a particular element of her claim, the plaintiff must come forward with evidence on that element to avoid summary judgment. *Id.* at 322. But when a defendant

27  does not identify an alleged deficiency in the plaintiff's proof, the plaintiff is not required to come forward with evidence to disprove the deficiency at the summary judgment

28  stage. True, the plaintiff will be required to prove all elements of her claim at trial, but she need only respond at the summary judgment stage to arguments made in the motion for summary judgment.

1    April 24, 2014, but many of the alleged FDCPA violation occurred before April of 2013.

2    Plaintiff urges the Court to adopt the continuing-violation doctrine.  Plaintiff also argues

3    that her claims are timely because the discovery of her injury – the foreclosure of her

4    house – occurred less than a year before she filed suit.

5         The continuing-violation doctrine has roots in the common law.  Kyle Graham,

6    *The Continuing Violations Doctrine*, 43 Gonz. L. Rev. 271, 308 (2008) (discussing early

7    versions of the doctrine in trespass and nuisance suits from the 1500s).   Broadly

8    speaking, the doctrine permits a plaintiff to recover "for actions that take place outside

9    the limitations period if these actions are sufficiently linked to unlawful conduct within

10   the limitations period."  *Sosa v. Utah Loan Servicing, LLC*, No. 13-CV-364-W(KSC),

11   2014 WL 173522, at *4 (S.D. Cal. Jan. 10, 2014) (quotation marks and citation omitted).

12   Some courts have described this as a tolling doctrine, but most treat it as a doctrine

13   governing accrual.  *Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) (collecting

14   cases); *see also Pisciotta v. Teledyne Indus., Inc.*, 91 F.3d 1326, 1332 (9th Cir. 1996)

15   ("Under [the continuing-violation] theory, the statute of limitations does not begin to run

16   until the last breach occurs.").  In the context of statutorily-created causes of action, the

17   applicability of the doctrine is a question of statutory interpretation.  *See, e.g.*, *Nat'l R.R.*

18   *Passenger Corp. v. Morgan*, 536 U.S. 101, 109-10 (2002); *Havens Realty Corp. v.*

19   *Coleman*, 455 U.S. 363, 380 (1982).

20        The FDCPA states that "[a]n action to enforce any liability created by this

21   subchapter may be brought . . . within one year from the date on which the violation

22   occurs."  15 U.S.C. § 1692k(d).  By referring to "the violation," the statute could be read

23   as referring to a single act, but courts could also consider an ongoing violation of the

24   FDCPA to be one violation that consisted of several parts.  Some courts have adopted this

25   view, holding that when "the conduct complained of [under the FDCPA] constitutes a

26   continuing pattern and course of conduct as opposed to unrelated discrete acts," then the

27   entirety of that conduct is a single violation of the FDCPA.  *See Joseph v. J.J. MacIntyre*

28   *Cos., LLC*, 281 F. Supp. 2d 1156, 1161-62 (N.D. Cal. 2003) (applying the doctrine when

- 6 -

1
2
3
4
5

the defendant had made hundreds of repeated, automated collection calls to Plaintiff over an 18 month period).[4]   Under this approach, a plaintiff's claim regarding a continuing pattern of FDCPA violations could accrue on the date of the most recent violation and a defendant could be liable for conduct that otherwise falls outside of the limitations period.

6
7
8
9
10
11
12
13
14
15

The Supreme Court has provided guidance on the distinction between a continuing violation and a series of individual violations.  *See Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007); *Morgan*, 536 U.S. at 109-11.  Title VII requires a claimant to file a claim within 180 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).  Interpreting this language, the Supreme Court found that "[t]here is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing."  *Morgan*, 536 U.S. at 111. For that reason, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" do not call for application of the continuing-violation doctrine, even when a time-barred discriminatory act is related to more recent acts.  *Id.* at 114.

16
17

The Supreme Court has adopted a different approach, however, for hostile work environment claims under Title VII.  It has explained that such claims:

18
19
20
21
22
23

> are different in kind from discrete acts.  Their very nature involves repeated conduct.  The 'unlawful employment practice' therefore cannot be said to occur on any particular day.  It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own. . . .  Such claims are based on the cumulative effect of individual acts. . . .  A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' . . .  [Thus, p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

24

*Id.* at 115-17 (quotation marks and citations omitted).

25

The Court finds that "the violation" in the FDCPA is similar to "the alleged

26

---

27
28

[4] *See also Sosa*, 2014 WL 173522, at *4; *Bennett v. Portfolio Recovery Assocs., LLC*, No. CV-12-9827-DSF, 2013 WL 6320851, at *2 (C.D. Cal. Nov. 22, 2013); *Guillen v. Bank of Am. Corp.*, No. 5:10-CV-05825 EJD, 2011 WL 4071996, at *5 n.3 (N.D. Cal. Aug. 31, 2011).

1    unlawful employment practice" in Title VII and that the Supreme Court's guidance is

2    relevant to this case.  The Court finds that Defendants' alleged FDCPA violations are

3    more akin to discrete acts than a continuing course of conduct.  The following alleged

4    FDCPA violations are identified in the parties' briefing:

- November 2009: Maxwell's letter to Plaintiff misrepresented the amount of Plaintiff's debt.

- February 2010: Defendants drafted a payment agreement with Plaintiff which violated the FDCPA by failing to state the amount owed, failing to promise that Plaintiff's payments would be applied first to the principal of the debt, and misrepresenting the amount of the debt.

- July 2010: Defendants misrepresented to the justice court the amount Plaintiff owed and the amount Plaintiff had paid.  They also sought recovery for fees to which they were not entitled.

- November 2010: Maxwell sent a letter to Plaintiff that misrepresented the amount of the debt and ignored Plaintiff's right to certain property exemptions.

- December 2010: Defendants again misrepresented the amount of the debt in paperwork they filed with the justice court.

- April 2012: Defendants misrepresented the amount of Plaintiff's debt in the complaint for their foreclosure suit.  The filing of the lawsuit also violated the FDCPA because it sought recovery for amounts that had been previously awarded in the justice court lawsuit.

- June 2012: Nikolaus's email misrepresented the amount of Plaintiff's debt. Defendants also drafted a stipulated judgment that was unclear about the number of payments Plaintiff would be required to make.

- May-September 2013: Having made several payments, Plaintiff repeatedly asked Nikolaus how much she still owed.  Nikolaus failed to give her a clear answer.

- November 2013: Defendants' request for a writ of execution misrepresented the amount of Plaintiff's debt.  Defendants also requested an unreasonable amount in attorneys' fees.

23    All of these alleged wrongs involved Defendants' attempts to collect the debt

24    Plaintiff owed to the Association, and almost all involved alleged misrepresentations,

25    such as inflating Plaintiff's debt, failing to account for payments, or charging fees to

26    which the Association was not entitled.  These violations are interrelated, but they are not

27    sufficiently linked to be considered an ongoing violation of the FDCPA.

28    For instance, Maxwell sent a letter to Plaintiff on November 23, 2010.  Doc. 81-1

1    at 114.  Plaintiff claims that the letter violated the FDCPA by falsely stating she owed

2    $1,466.80 and ignoring her right to certain property exemptions under Arizona law.

3    Doc. 80 at 10.  Three years later, on November 6, 2013, Maxwell requested a writ of

4    execution for foreclosure.  Doc. 81-2 at 52-53.  Plaintiff claims that the request violated

5    the FDCPA by falsely stating she owed $4,791.58, including $1,597.50 in attorneys' fees.

6    Doc. 80 at 6.  Although the 2010 letter and the 2013 request for a writ involve similar

7    facts, they represent discrete actions.  One is a letter, the other a court filing; they

8    occurred three years apart; they involved different amounts; and they involved different

9    alleged violations of the FDCPA.

10         Similar distinctions could be made regarding each of Plaintiff's claims.  The

11   alleged wrongs occurred over a span of four years and involved, respectively, a letter, a

12   draft agreement, a filing in justice court, another letter, paperwork filed in justice court, a

13   complaint for foreclosure in superior court, an email, a failure to respond to Plaintiff, and

14   a request for a writ of execution.  Each involved different claimed amounts and many

15   included additional, unrelated alleged violations of the FDCPA.

16         Plaintiff's case is not like *Joseph*, where the defendant made hundreds of

17   automated collection calls to the plaintiff over a period of 18 months.  *See* 281 F. Supp.

18   2d at 1161-62.  Nor is it similar to a hostile work environment claim which "cannot be

19   said to occur on any particular day," "is composed of a series of separate acts that

20   collectively constitute one 'unlawful employment practice,'" and may not even rise to the

21   level of an actionable hostile work environment until the cumulative effect of the many

22   wrongs is understood.  *Morgan*, 536 U.S. at 115, 117.  Defendants' actions are each

23   alleged to have violated specific provisions of the FDCPA, occurred on definite days,

24   involved different conduct and different debt amounts, and extended over four years.

25   Defendants' actions are more like "[d]iscrete acts such as termination, failure to promote,

26   denial of transfer, or refusal to hire," which may be related but nevertheless do not

27   implicate the continuing-violation doctrine.  *Id.* at 114.

28         The Court also finds the breaks in time between the alleged violations to be

1  significant.  Plaintiff does not allege any violation in the year of 2011.  Sixteen months

2  elapsed between the fifth and sixth violations recounted above, and almost a year

3  between the seventh and eighth.

4          Furthermore, the Court finds troubling the notion that every communication

5  regarding a debt starts the limitations period anew.  As another court explained, "[i]f

6  plaintiff's theory were correct, . . . his cause of action could be kept alive indefinitely

7  because each new communication would start a fresh statute of limitations."  *Sierra v.*

8  *Foster & Garbus*, 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999); *see also Nutter v. Messerli*

9  *& Kramer, P.A.*, 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007) (finding that "'[n]ew

10 communications . . . concerning an old claim . . . [do] not start a new period of

11 limitations'") (quoting *Campos v. Brooksbank*, 120 F. Supp. 2d 1271, 1274 (D.N.M.

12 2000)).  In sum, the Court concludes that the continuing-violation doctrine does not save

13 Plaintiff's claims for violations that occurred before April of 2013.[5]

14         Plaintiff also seeks to apply the discovery rule, arguing that she did not discover

15 her injury until her home was foreclosed in January of 2014.  The Court is not persuaded,

16 however, that the discovery rule should apply to this case.  In *Naas v. Stolman*, 130 F.3d

17 892, 893 (9th Cir. 1997), the Ninth Circuit held that when the alleged violation of the

18 FDCPA is the filing of a lawsuit, "the statute of limitations beg[ins] to run on the filing of

19 the complaint."[6]  Plaintiff's complaint makes clear that every alleged FDCPA violation

20 that occurred more than one year before this case either preceded or occurred as part of a

21

22         [5] Earlier in this case, the Court denied a motion to dismiss because the continuing-
   violation doctrine might apply.  Doc. 37.  That decision does not control here.  As the
23 Court noted in its earlier decision, a motion to dismiss based on the statute of limitations
   may be granted only if it appears beyond doubt that the plaintiff can prove no set of facts
24 that would establish the timeliness of the claim.  *Supermail Cargo, Inc. v. United States*,
   68 F.3d 1204, 1207 (9th Cir. 1995); Doc. 37 at 6-7.  Focusing solely on Plaintiff's
25 allegations, the Court could not conclude that this test had been satisfied.  Doc. 37 at 7.
   This conclusion does not control a ruling on summary judgment, which focuses on
26 evidence, not allegations.

27         [6] Later cases have recognized that this rule "only applies to cases where there is no
   question that the defendant was properly named and served in the underlying collection
28 action."  *Huy Thanh Vo v. Nelson & Kennard*, 931 F. Supp. 2d 1080, 1086 (E.D. Cal.
   2013).  Plaintiff does not claim that she was not served in the underlying cases.

1     court action.  These include Defendants initial filing of the justice court action in 2009

2     (Doc. 1, ¶ 12) and their later filing of the superior court action in 2012 (*id.*, ¶ 15).  The

3     alleged violations either preceded those lawsuits, in which event the filing of the lawsuits

4     would have triggered the limitations period, or occurred as part of the lawsuits (*id.*, ¶¶ 14,

5     17, 19).  Thus, Plaintiff's discovery rule argument does not save her older claims from

6     the FDCPA's one-year statute of limitations.[7]

7               **B.      Plaintiff's Timely FDCPA Claims.**

8               Plaintiff asserts two claims based on conduct occurring less than one year before

9     this case was filed: (1) in judicial proceedings in 2013 and 2014, Defendants allegedly

10    misrepresented the amount of Plaintiff's debt and sought attorneys' fees to which they

11    were not entitled; and (2) in May through September of 2013, Defendants did not respond

12    to Plaintiff's requests for a statement of the amount she owed.  The Court finds that

13    neither claim survives Defendants' cross motion for summary judgment.

14              **1.      The Writ's Misrepresentation of Attorneys' Fees and Debt.**

15              Plaintiff claims that Defendants violated the FDCPA by "falsely stating in the Writ

16    that the balance due was $4,791.58 and including unadjudicated attorneys' fees of

17    $1,597.50."  Doc. 80 at 6.  As for the attorneys' fees, Plaintiff emphasizes that,

18              Defendants never sought judicial approval for any of these amounts, never
19              had any court determine they were reaso[n]able, and simply decided for
              themselves the reasonableness of the attorneys' fees and costs that they
20              incurred. . . .  Defendants collected these unilaterally awarded fees even
              though Arizona law does not provide for post-judgment attorneys' fees
21              except where expressly permitted by statute or other basis for such fees.

22    *Id.* at 12.

23              Although not clearly stated, Plaintiff appears to claim that this conduct violates 15

24    U.S.C. § 1692e, which prohibits the misrepresentation of "the character, amount, or legal

25    status of any debt."  Among other points, Defendants argue that because the stipulated

26    _____

27              [7] The Ninth Circuit has applied the discovery rule to FDCPA claims that did not
      involve the filing of a lawsuit, *Mangum v. Action Collection Service, Inc.*, 575 F.3d 935,
28    940 (9th Cir. 2009), but the Court concludes that *Naas* controls this largely litigation-
      based series of alleged violations.

1    judgment that Plaintiff signed authorized the amounts that were included in the writ of

2    execution, the Court should grant Defendants summary judgment on Plaintiff's claims

3    regarding these amounts.

4         The stipulated judgment signed on June 29, 2012, stated that the "principal sum"

5    owed was "$4,027.24 . . . with additional assessments and charges accruing effective

6    January 1, 2013 . . . plus monthly late charges."  Doc. 81-1 at 131.  The judgment also

7    stated that Plaintiff owed "attorney fees herein in an amount of $1,687.50, plus accruing

8    attorney fees incurred hereafter."  *Id*.  When Defendants sought a writ of special

9    execution to foreclose on Plaintiff's house in 2013, they stated that the total amount owed

10   was $4,791.58, which included "attorney fees of $1,687.50, plus accruing attorney fees of

11   $1,597.50."  Doc. 81-2 at 52-53.  The Maricopa County Superior Court approved these

12   amounts and issued the writ.  *Id.* at 53.

13        Plaintiff has not explained how this conduct amounts to a misrepresentation of

14   "the character, amount, or legal status of any debt."  As Defendants note, the stipulated

15   judgment authorized the fees that were included in the writ of execution.  Plaintiff argues

16   that Arizona law generally does not allow a party to collect post-judgment attorneys'

17   fees, but "[i]t is well-settled in Arizona that [c]ontracts for payment of attorneys' fees are

18   enforced in accordance with the terms of the contract."  *Bennett Blum, M.D., Inc. v.*

19   *Cowan*, 330 P.3d 961, 963 (Ariz. Ct. App. 2014) (quotation marks and citations omitted).

20   What is more, "[w]hen the 'broad language' of a contractual attorneys' fees provision

21   gives no indication of an intent to exclude fees for work done after entry of judgment,

22   those fees are generally recoverable."  *Costa v. Maxwell & Morgan PC*, No. CV-15-

23   00315-PHX-NVW, 2015 WL 3490115, at *5 (D. Ariz. June 3, 2015).

24        Plaintiff also argues that Defendants could not "unilaterally" decide whether the

25   requested attorneys' fees were reasonable.  This is true.  "Arizona law is clear that even

26   when fees are awarded pursuant to an express contractual agreement, rather than statute,

27   the prevailing party is not entitled to its fees unless a court has already determined that

28   the specific amount that party seeks is reasonable."  *Id.* at *6.  But Defendants in this case

1  did not unilaterally determine the amount of fees they were to receive – the Maricopa

2  County Superior Court approved the fees Defendants requested.  The court signed the

3  writ of execution and *twice* rejected Plaintiff's opposition to the requested attorneys' fees.

4  *See* Doc. 101-2 at 43 (denying Plaintiff's motion to cancel the sheriff's sale, in which

5  Plaintiff had argued that the amount of owed attorneys' fees was ambiguous (*id.* at 39));

6  *id.* at 74 (denying Plaintiff's motion for relief from judgment, in which Plaintiff had

7  argued that Defendants could not "award unadjudicated future assessments, attorneys'

8  fees, and costs" (*id.* at 53)).  By so ruling, the state court implicitly found that the

9  requested attorneys' fees were reasonable.  *See, e.g.*, *Costa*, 2015 WL 3490115, at *6.

10  The Court cannot conclude that Defendants violated the FDCPA by seeking attorneys'

11  fees in a filing they made with a court, particularly when it was clear that the fees would

12  be paid only if the court found them to be reasonable.[8]

13       Plaintiff argues that Defendants misrepresented the amount of Plaintiff's debt in

14  the writ of execution.  But again, the stipulated judgment authorized these amounts.

15  Plaintiff has not shown that there is a genuine dispute of material fact as to whether the

16  stipulated judgment authorized the amounts Defendants collected.  The Court therefore

17  grants Defendants' motion for summary judgment on this claim.[9]

18                **2.       Defendants' Communications with Plaintiff in 2013.**

19       Plaintiff claims that Defendants' failure to respond to her repeated requests for a

20  statement of the amount she owed violated 15 U.S.C. §§ 1692e and 1692f.  Specifically,

21  Plaintiff sent a $250 check to Defendants on May 5, 2013, and requested a statement of

22  the amount owed.  Doc. 81-2 at 27.  Defendants did not respond until August 21, when

23  Nikolaus sent Plaintiff an email stating that she had not paid off her debt and attaching a

24

25       [8] *Costa* found a possible section 1692e violation when unadjudicated attorneys'
26  fees were demanded in a letter to the debtor.  2015 WL 3490115, at * 6.  This differs
   from a request for fees in a court filing the court must approve.

27       [9] At oral argument, Plaintiff's counsel argued that the writ carried forward the
28  FDCPA wrongs from the earlier lawsuits and judgments, but those earlier wrongs are
   barred by the statute of limitations, and the Court cannot conclude that they are revived
   simply because the judgments they produced were used in securing the writ.

- 13 -

1   copy of the stipulated judgment. *Id.* at 31. On September 19, 2013, Plaintiff called and

2   emailed Defendant Nikolaus requesting information about her debt. *Id.* at 30-31, 33. On

3   September 23, Plaintiff sent Defendants a $275.74 check and a letter explaining why she

4   thought this settled her debt. *Id.* at 45. Nikolaus did not respond until November 6, when

5   he informed her that she had not paid off her debt and again asked her to review the

6   stipulated judgment. *Id.* at 30. Plaintiff claims that Defendants' late and vague responses

7   misrepresented the amount of Plaintiff's debt and constituted "unfair or unconscionable

8   means to collect" the debt. *See* 15 U.S.C. §§ 1692e, 1692f.

9                    **a.       Applicability of the FDCPA to Foreclosure Activities.**

10          Defendants seek summary judgment because the FDCPA does not apply to efforts

11  to enforce a security interest or foreclose on a lien. "[T]he FDCPA applies only to a debt

12  collector who engages in practices prohibited by the Act in an attempt to collect a

13  consumer debt." *Mansour v. Cal-W. Reconveyance Corp.*, 618 F. Supp. 2d 1178, 1182

14  (D. Ariz. 2009) (citation omitted). Some courts have held that foreclosure proceedings

15  are not the collection of a debt for purposes of the FDCPA. *See Hulse v. Ocwen Fed.*

16  *Bank, FSB*, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) (distinguishing foreclosure of

17  interest in property from efforts to collect funds from debtor); *Gray v. Four Oak Ct.*

18  *Ass'n, Inc.*, 580 F. Supp. 2d 883 (D. Minn. 2008) (finding that homeowners association

19  lien foreclosure proceeding to recover assessment fees was effort to enforce a security

20  interest rather than debt collection under the FDCPA). Other courts have held that

21  community housing associations and their agents are not debt collectors when they are

22  "'actively engaged in an attempt to dispossess the [debtor] of secured property.'" *See,*

23  *e.g.*, *Calvert v. Alessi & Koenig, LLC*, No. 2:11-CV-00333-LRH-PAL, 2013 WL 592906,

24  at *4 (D. Nev. Feb. 12, 2013) (quoting *Owens v. Hellmuth & Johnson, PLLC*, 550 F.

25  Supp. 2d 1060, 1066 (D. Minn. 2008)).

26          Under these holdings, Defendants' filing of the writ did not constitute a violation

27  of the FDCPA, but the holdings do not immunize Defendants other actions during 2013.

28  When Defendants communicated (or failed to communicate) with Plaintiff regarding her

1    debt in 2013, they were not yet actively engaged in an attempt to dispossess her of her

2    home.  Rather, they were still trying to collect a monetary sum.  Defendants designed the

3    stipulated judgment so that Plaintiff could pay off her debt instead of losing her home.

4    Starting in May of 2013, Plaintiff contacted Defendants regarding the amount she still

5    owed under the judgment.  Defendant Nikolaus responded twice, both times encouraging

6    her to review the terms of the judgment without disclosing the amount she still owed.  He

7    did not threaten to foreclose on her home.  As other courts have found in similar

8    situations, Defendants were not enforcing a security interest during these

9    communications.  *See, e.g.*, *Calvert*, 2013 WL 592906, at *5 (finding that "pre-notice of

10   default" letters were not efforts to enforce a security interest).

11          Defendants make a broad argument – that all of their 2013 actions related to

12   foreclosure of a lien and therefore could not have violated the FDCPA.  For the reasons

13   explained above, the Court cannot agree.  On the basis of the cases cited above, the Court

14   will grant summary judgment in favor of Defendants with respect to their actual

15   foreclosure actions – the filing of the writ and the actual foreclosure.  But the Court will

16   address Defendants' other 2013 communications separately.

17                    **b.      FDCPA Violations Based on Remaining Communications.**

18          Defendants seek summary judgment because a "least sophisticated debtor" would

19   not have found Defendants' 2013 communications to be false or misleading or to

20   constitute unfair or unconscionable debt collection practices.  In the Ninth Circuit, a debt

21   collector's liability under §§ 1692e and 1692f is a question of law.  *Gonzales v. Arrow*

22   *Fin. Servs., LLC*, 660 F.3d 1055, 1061 n.3 (9th Cir. 2011); *see Donohue v. Quick Collect,*

23   *Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010) ("Whether conduct violates §§ 1692e or 1692f

24   requires an objective analysis that takes into account whether 'the least sophisticated

25   debtor would likely be misled by a communication.'" (quoting *Guerrero*, 499 F.3d at

26   1030)).  The least sophisticated debtor standard "presumes a basic level of understanding

27   and willingness to read with care."  *Gonzales*, 660 F.3d at 1062 (quotation and citation

28   omitted).  The least sophisticated debtor is charged with a reasonable knowledge of both

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

communications between the debtor and the debt collector, *Guerrero*, 499 F.3d at 934, and the account's history, *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 645-46 (7th Cir. 2009).

In June of 2012, the parties negotiated a settlement of Plaintiff's then-outstanding debt.  On June 15, 2012, Nikolaus provided Plaintiff with an updated account balance "regarding the pending lien foreclosure lawsuit."  Doc. 101-1 at 33-34.  The total balance was $6,307.24, which included the principal, the Association's 2012 assessment, and the accrued attorneys' fees and costs to date.  *Id.*  Several days later, Plaintiff "propose[d] the following arrangement: $2500.00 upfront payment with 12 monthly payments of $250.00 for a total of $5500.00," which she characterized as "a fair and reasonable compromise." *Id.* at 33.  The Association accepted Plaintiff's proposal on the condition that she sign a stipulated judgment, which the parties executed on June 27, 2012.  *Id.* at 36, 48.

The stipulated judgment stated that Plaintiff owed $4,027.24 in principal, $800.50 in accrued costs, and $1,687.50 in accrued attorneys' fees, for a total of $6,515.24.  *Id.* at 46.  This amount did not include the Association's upcoming assessment for 2013.  The stipulated judgment provided that "[i]f and only if all payments required hereunder are timely made and payment in full has otherwise been received by [the Association], [the Association] agrees to waive $1,015.24."  *Id.* at 47.  Thus, if Plaintiff made all the required payments, she would pay a total of $5,500.00 – the agreed upon settlement amount.  As Plaintiff had proposed, the stipulated judgment required an initial "$2,500 payment on or before July 5, 2012, and continuing in the minimum amount of $250.00 per month, to be received no later than the 15th of each month, and until the Judgment is paid in full, or within a period of twelve (12) months, whichever comes earlier."  *Id.*  The stipulated judgment stated that "there shall be no grace period or right to additional notice of intent to execute upon this Judgment if any payment is not received on or before the 15th of each month."  *Id.*

Plaintiff made the initial $2,500 payment and the first ten monthly payments, but she failed to make the required payments in June and July of 2013.  *Id.* at 53-73, 92.  On

1   May 5, 2013, she sent Nikolaus a letter asking how much she still owed.  Doc. 81-2 at 27.

2   Nikolaus wrote Plaintiff on August 21, 2013, noted her failure "to make $250 [payments]

3   consecutively for 12 months," inquired about her "intentions," and reserved the right to

4   "proceed with all available legal remedies to collect the full balance owing."  Doc. 101-1

5   at 92.  On September 19, 2013, Plaintiff acknowledged that she had made only the initial

6   payment and ten monthly payments for a total of $5,000.  *Id.* at 94.  Plaintiff tendered an

7   additional $275.74 payment, claiming that it satisfied the remaining account balance.  *Id.*

8   Nikolaus replied on November 6, 2013 by directing Plaintiff's attention back to the

9   stipulated judgment and once again inquiring as to her intentions.  *Id.*  The same day,

10   Defendants sought a writ of special execution to satisfy the judgment.  Doc. 101-2 at 4-8.

11          Against this backdrop, the Court must determine whether Defendants' 2013

12   communications, including Defendants' failure to respond to Plaintiff's request for an

13   updated account balance, would have misled the least sophisticated debtor.  As noted

14   above, such a debtor is presumed to have a basic level of understanding and a willingness

15   to read with care, *Gonzales*, 660 F.3d at 1062, a reasonable knowledge of

16   communications with the debt collector, *Guerrero*, 499 F.3d at 934, and a reasonable

17   knowledge of the account's history, *Wahl*, 556 F.3d at 645-46.   Given these

18   presumptions, the Court concludes that Defendants' communications or lack thereof

19   would not have misled a least sophisticated debtor or constituted an unfair debt collection

20   practice.

21          Plaintiff proposed the compromise that resulted in her obligation to pay $5,500

22   through a $2,500 initial payment and twelve monthly payments of $250.  A least

23   sophisticated debtor who proposed such a plan surely would understand it.  The stipulated

24   judgment stated that Plaintiff owed this amount (significantly less than her $6,515.24

25   outstanding obligation) only if she strictly complied with the payment schedule she had

26   proposed.  Under no scenario could Plaintiff owe less than $5,500.  Based on a presumed

27   careful reading of the stipulated judgment, and with a reasonable knowledge of the

28   parties' past communications and account history, a least sophisticated debtor would

1  know that she owed the $250 payments that were due in June and July of 2013.  Further,

2  based on a careful reading of the stipulated judgment and with knowledge of the parties'

3  past communications and her account history, a least sophisticated debtor would know

4  that she was obligated to pay the full $6,515.24 once she failed to comply with the

5  agreed-upon payment schedule.

6        Defendants surely could have responded with a statement of Plaintiff's account

7  balance when she inquired, but the Court cannot conclude that Defendants' failure to do

8  so misled Plaintiff as to the amount she owed or constituted an unfair collection practice.

9  Plaintiff herself had proposed the payment schedule, and it was memorialized in the

10  stipulated judgment.  Even a least sophisticated debtor would know that more was owed

11  after the May payment.  The Court therefore finds that the Defendants are entitled to

12  summary judgment on Plaintiff's claims based on Defendants' 2013 communications.

13        **IT IS ORDERED:**

14        1.    Plaintiff's motion for partial summary judgment (Doc. 80) is **denied**.

15        2.    Defendants' cross motion for summary judgment (Doc. 100) is **granted**.

16        3.    Plaintiff's motions in limine (Docs. 82, 83) are **denied as moot**.

17        4.    Plaintiff's motion to strike Defendants' supplemental expert report

18            (Doc. 85) is **granted** for reasons stated on the record at oral argument.

19        5.    Defendants' motion to strike (Doc. 99) is **denied**.

20        6.    The Clerk is directed to enter judgment for Defendants and terminate the

21            action.

22        Dated this 4th day of November, 2015.

23

24

25

26                                    David G. Campbell

27                                   United States District Judge

28